NOT FOR PUBLICATION (Docket Entries 46, 73)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
: 
HALBERT COURSEY, :
 :
          Plaintiff, : Civil No. 05-2820 (RBK)
 :
    v. : **OPINION**
 :
CITY OF CAMDEN, et al., :
 :
          Defendants. :
_____:

**KUGLER**, United States District Judge:

      Plaintiff Halbert Coursey ("Plaintiff") seeks damages for injuries and violations of his civil rights stemming from events surrounding his arrest on February 5, 2004. Defendants the State of New Jersey; New Jersey Division of State Police; Colonel Joseph Fuentes, Superintendent of the New Jersey State Police; and State Police Officers Thomas P. Kerchersky and Leonard DiJoseph now move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). Also before the Court is the motion of Defendants City of Camden, City of Camden Police Department, and Chief of the Camden Police Department Edwin Figueroa for summary judgment on Plaintiff's claims. As discussed below, the motion to dismiss is granted in part and denied in part. The motion for summary judgment is granted in its entirety.

**I.    BACKGROUND**

      The Court summarizes the facts as alleged in the Third Amended Complaint. Plaintiff

1

lives at 223 Ablett Village, in Camden, New Jersey.  His claims arise from his arrest as part of a raid on known "drug sets" in Camden on February 5, 2004.  On that day, Plaintiff was riding his bicycle through Ablett Village to his residence.  At the same time, members of the New Jersey Division of State Police ("State Police"), the City of Camden Police Department, and the Delaware River Port Authority ("DRPA") Police Department were executing two search warrants.  These officers from different law enforcement agencies were acting pursuant to the Camden Anti-Crime Partnership ("CAP"), a multi-jurisdictional task force established at the direction of the Governor of New Jersey in 2002 to address the problem of crime in Camden.  Plaintiff alleges that he was caught up in the execution of the search warrants when he was mistaken for another individual named "Gary" or "Rock."  He alleges that police officers mistakenly thought he was acting as a look-out and yelling "Vice!" to alert the targets of the search warrants to the presence of the police.  Plaintiff alleges that he was not in fact acting as a look-out or otherwise violating the law.

After being told by radio communication that Plaintiff was acting as a look-out, Defendants State Police Officers Leonard DiJoseph and Thomas Kerchersky approached Plaintiff in a vehicle while he was riding his bicycle.  Kerchersky allegedly opened one of the vehicle's doors into Plaintiff, knocking him off his bicycle and onto the ground.  According to Plaintiff, DiJoseph then got out of the vehicle and then repeated beat Plaintiff's head into the ground.  Both officers struck Plaintiff with their fists.  DiJoseph then handcuffed and arrested Plaintiff.  Plaintiff informed DiJoseph that he had asthma and his breathing was being restricted by the officers' actions and that the handcuffs were too tight.  DiJoseph repeatedly told Plaintiff, "Shut the fuck up."

Plaintiff was placed on the ground behind the vehicle.  He was then moved to a State Police car and after a while was removed and placed in another car.  At some point, DRPA Police Officer Michael Voll and State Police Officer Gregory Leach drove Plaintiff to a remote location across the street from 1224 Atlantic Avenue, Camden.  Plaintiff was forced out of the car and forced to strip in full view of the public.  He was then ordered to get dressed and get back into the police car.  He was finally taken to West Jersey Hospital to be treated for his injuries, where Officers Voll and Leach told him, "You better not say anything, or we will fuck you up."

Plaintiff was charged with possession of a controlled substance, distribution of a controlled substance, having a controlled substance within 500 feet of public housing units, and resisting arrest by flight.  He alleges he had no drugs on him at the time of his arrest and did not attempt to flee at any point.  His bail was originally set at $27,500 but was later reduced to $1,000.  He posted bail on February 25, 2004, after having remained in jail for approximately three weeks.  On December 20, 2004, all charges against Plaintiff were dropped.

Plaintiff filed a Complaint on January 31, 2005 in the Superior Court of New Jersey, Camden County against the State of New Jersey, the State of New Jersey State Police, Superintendent of the New Jersey State Police Edwin Figueroa, State Police Officers John Does 1-50, John Roes 1-50, the City of Camden, the City of Camden Police Department, Chief of the Camden Police Department Rick Fuentes, and Camden Police Officers John Does 1-50.  The State of New Jersey was served with the complaint and summons on May 2, 2005 and removed the case to this Court on June 1, 2005.  On August 4, 2005, Plaintiff moved to amend the Complaint to fix an error in the original Complaint: the superintendent of the State Police is Joseph Fuentes, and the chief of the Camden Police Department is Edwin Figueroa.  This

3

unopposed motion was granted and the First Amended Complaint was filed. Plaintiff moved to filed a Second Amended Complaint on November 1, 2006, adding as defendants State Police Officers DiJoseph and Kerchersky. Margistrate Judge Ann Marie Donio granted Plaintiff's motion in part and denied it in part on June 29, 2007 (Docket Entry No. 42), and the Second Amended Complaint was filed on July 19, 2007 (Docket Entry No. 45). Plaintiff later moved to file a Third Amended Complaint; after hearings Magistrate Judge Donio granted in part and denied in part this motion (Docket Entry No. 85, 89), and the Third Amended Complaint was filed on March 10, 2008 (Docket Entry No. 90). The Third Amended Complaint seeks relief on a multitude of claims against the State of New Jersey, the State Police, the Superintendent of the State Police, State Police Officers DiJoseph and Kerchersky, the City of Camden, the City of Camden Police Department, the Chief of the Camden Police Department, the DRPA, and DRPA Police Officer Voll.

## II.  DISCUSSION

### A.  Motion to Dismiss

#### 1.  Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept Plaintiff's allegations, along with all reasonable inferences that may be drawn from them, as true. Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001) (citing Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1255 (3d Cir. 1994)). The Court may dismiss the Complaint only if Plaintiff can prove no set of facts that would entitle him to relief. Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. & Research Found., 334 F.3d 365, 374 (3d Cir. 2003) (citation omitted). The Court considers whether Plaintiff has stated

a claim for each count against each Defendant and whether any Defendant is entitled to immunity for that count.

Because the New Jersey Division of State Police is an arm of the state, the Court will group these two defendants together as the "State Defendants." Longoria v. New Jersey, 168 F. Supp. 2d 308, 315-16 (D.N.J 2001). Because Colonel Fuentes has only been sued in his official capacity as Superintendent of the New Jersey State Police, he will also be grouped with the State Defendants. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."). Kerchersky and DiJoseph will be grouped as the "Trooper Defendants."

The present motion to dismiss was filed by the State and Trooper Defendants before the Third Amended Complaint and so the motion is directed at the Second Amended Complaint. Though the two Complaints are largely similar for the purposes of the Court's analysis, there are a few material differences. Consequently, where the motion to dismiss could be granted on the allegations as stated in the Second Amended Complaint but would be denied on the allegations stated in the Third Amended Complaint, the motion will be denied for the sake of efficiency.

### 2. Claims Under the Fifth and Eighth Amendment

The Complaint in Count 8 asserts a claim under the Fifth Amendment. The Fifth Amendment's protection of due process only applies to the federal government and not to state or local governments, so this claim is dismissed. Nguyen v. U.S. Catholic Conf., 719 F.2d 52, 54-55 (3d Cir. 1983).

Count 10 asserts a claim asserting violations of the Eighth Amendment's prohibition

against cruel and unusual punishment. However, this prohibition only applies only after an individual has been adjudicated. Fuentes v. Wagner, 206 F.3d 335, 344 n.11 (3d Cir. 2000) (the protections of the cruel and unusual punishments clause do not apply until "after conviction and sentence") (citing Graham v. Connor, 490 U.S. 386, 392 n.6 (1989)). The events in question here occurred during Plaintiff's arrest and not after conviction and sentence, and the alleged violations are more properly pled as an excessive force claim. Plaintiff indeed pleads a claim in this form in Counts 11 and 12. The Eighth Amendment claim is dismissed as to all defendants.

### 3. Eleventh Amendment Immunity: Counts 1-13

The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the kind of relief sought.[1] Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Likewise, absent a waiver of immunity by the state, the Eleventh Amendment precludes federal suits for money damages against states and state officers sued in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 169 (1985).

Here, the State Defendants waived their Eleventh Amendment immunity by removing this case from state to federal court. (See State Defs.' Reply Br. 3 n.2.) However, at the time of removal, only the State Defendants had been named; the Trooper Defendants were not named until the Second Amended Complaint, filed long after removal. (Docket Entry No. 45.) The Trooper Defendants in their official capacity as officers of the State have not waived immunity under the Eleventh Amendment.

---

[1] The Eleventh Amendment provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.

Plaintiff argues that because the Trooper Defendants committed the alleged violations while acting as part of the Camden Anti-Crime Partnership they were not acting in their role as state officials and are not entitled to immunity. (Pl.'s Br. 4-5.) Plaintiff has not named CAP itself as a defendant, only the officers acting under the auspices of the CAP program on the day of Plaintiff's arrest. Defendants argue that because there is no dispute that the Trooper Defendants arrested Plaintiff, they must have been acting in their capacity as members of the State Police and are therefore entitled to immunity.

There are three major criteria for determining whether an entity is an arm of the state for the purposes of Eleventh Amendment immunity: (1) whether the payment of the judgment would come from the state, (2) what status the entity has under state law, and (3) what degree of autonomy the entity has. Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989) (en banc).

Because this question comes before the Court in the context of a motion to dismiss, the Court evaluates Plaintiff's Complaint to determine if he could prove any set of facts that would entitle him to relief and that would not be barred by immunity. At this stage, with no evidence in the record as to any of the Fitchik factors, the Court cannot say that Plaintiff could not prove that the Trooper Defendants were acting in a capacity other than as employees of the State Police. The Court cannot assume that the Trooper Defendants were acting in their role as state police officers; the Complaint alleges that they were in fact acting as "substitute City of Camden Police Officers." (SAC ¶ 14.) The Court cannot make a determination about CAP's status and the status of officers participating in the program in the absence of evidence. Analysis of the Fitchik factors will require information about whether officers retain their own jurisdictional identity

when participating in CAP programs or are identified as CAP officers only, whether CAP is a state-run program with state funding, and whether CAP is autonomous of the jurisdictions who participate in the program.  See Febres v. Camden Bd. of Educ., 445 F.3d 227 (3d Cir. 2006) (evaluating the record to determine whether the Fitchik factors had been met as to the status of a school board).

Accordingly, the Court will deny the motion to dismiss as to the claims against the Trooper Defendants in their official capacities as state employees in Counts 1, 11, 12, and 13.  In the Third Amended Complaint, Plaintiffs added claims in Counts 1, 6, 7, 8, 9, 11, 12, and 13 against the Troopers in their individual capacities.  The Court notes that even if the Trooper Defendants were not acting in their official capacity as state employees while participating in CAP, they were still acting as government officials, albeit at the municipal or regional level instead of the state level.  As government officials performing a discretionary function, the Trooper Defendants may be entitled to qualified immunity on Plaintiff's constitutional claims. Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Kopec v. Tate, 361 F.3d 772, 775-76 (3d Cir. 2004).  However, because this argument is based on the Third Amended Complaint, it is not properly before the Court at this time.

    **4.  Claims Under 42 U.S.C. § 1983: Counts 7, 8, 9, 11, and 12**

Count 7 alleges violations of Plaintiff's substantive due process rights under the Fourteenth Amendment and failure to withhold medical treatment under the Eighth Amendment, Count 8 alleges violations of equal protection in violation of the Fourteenth Amendment, Count 9 alleges an illegal seizure in violation of the Fourth Amendment, and Counts 11 and 12 allege excessive force in violation of the Fourth and Fourteenth Amendments.  These allegations are

8

brought pursuant to 42 U.S.C. § 1983, which provides a remedy for acts in violation of the United States Constitution committed by a person acting under color of state law. The actor committing the violation must be a person; states, arms of the state, and state officials acting in their official capacity are not "persons" covered by § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

The State Defendants' motion to dismiss Plaintiff's claims in Counts 7, 8, 9, 11, and 12 is granted because they are not considered "persons" covered by § 1983. Plaintiffs additionally charged the Trooper Defendants with Counts 11 and 12 of the Second Amended Complaint. As discussed above, the Court cannot conclude at this time whether the Trooper Defendants were acting in their official capacity as arms of the state. The motion to dismiss Counts 11 and 12 as against the Trooper Defendants in their official capacity is denied. The Third Amended Complaint adds Counts 7, 8, 9, 11, and 12 against the Trooper Defendants in their individual capacities as well.

    **5.**   **Intentional Torts: Counts 1, 2, 3, 4, and 13**

Plaintiff's claims for assault and battery, false arrest, false imprisonment, and emotional distress are all considered to be state law intentional tort claims; this Court will therefore subject these claims to an identical analysis.

The New Jersey Tort Claims act provides that public entities shall not be held liable "for acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. § 59:2-10. Furthermore, "[c]ourts in this District have interpreted Section 59:2-10 of the New Jersey Tort Claims Act to bar public entities from liability for claims of intentional torts, including claims for intentional infliction of emotional distress." Kee v.

9

Camden Cty., No. 04-842, 2006 U.S. Dist. LEXIS 73608, at *24 (D.N.J. Sept. 28, 2006) (citing Soto v. City of Newark, 72 F.Supp.2d 489, 497 (D.N.J.1999)).  The State Defendants therefore have immunity for the intentional torts allegedly committed by their employees, and this Court will dismiss Plaintiff's claims in Counts 1, 2, 3, 4, and 12 against the State Defendants.  Counts 2, 3, and 4 are only pled against the State Defendants.

Counts 1 and 12 remain against the Trooper Defendants.  The Tort Claims Act provides that "a public employee is not liable if he acts in good faith in the execution or enforcement of any law . . . ." N.J.S.A. § 59:3-3.  New Jersey courts define "good faith" in the context of N.J.S.A. § 59:3-3 to mean objectively reasonable conduct.  Fielder v. Stonack, 661 A.2d 231, 246 (N.J. 1995).  Plaintiff has alleged that he was knocked off his bicycle, beaten, and cursed at. (SAC ¶¶ 29, 32-32, 35.)  These facts are sufficient to allege objectively unreasonable conduct and so prevent the Trooper Defendants from being entitled to good faith immunity on Plaintiff's state law claims alleged in Counts 1 and 13.

### 6. New Jersey State Constitution: Count 6

Plaintiff alleges that the State Defendants violated his rights "to pursue and obtain safety and happiness; the right to due process; the right to be secure against unreasonable search and seizures; [and] the right to privacy" as provided for in the New Jersey State Constitution.  (SAC ¶ 93.)  Unlike violations of the United States Constitution, which are actionable through § 1983, the New Jersey Constitution itself provides a remedy for violations of its provisions.  Scully v. Borough of Hawthorne, 58 F. Supp. 2d 435, 459 (D.N.J. 1999).  The Court interprets these allegations to state violations of the guarantees in the New Jersey Constitution at Article 1, Paragraph 1 to equal protection of the laws and in Article 1, Paragraph 7 to freedom from

10

unreasonable searches and seizures.

Equal protection, under the New Jersey Constitution as under the United States Constitution, requires that similarly situated people be treated alike. Secure Heritage, Inc. v. City of Cape May, 825 A.2d 534, 546 (N.J. Super. App. Div. 2003). Plaintiff has alleged that he was treated differently because of his race. (SAC ¶ 101.) Though these allegations are minimal, on a motion to dismiss the Court accepts them as true and will not dismiss this claim.

Article I, Paragraph 7 of the New Jersey Constitution requires a search or an arrest by the police to be reasonable, measured in objective terms by examining the totality of the circumstances. State v. Ravotto, 777 A.2d 301, 306 (N.J. 2001). Plaintiff's allegations are sufficient to withstand dismissal; he has alleged that he was knocked off his bicycle, beaten, and strip searched without even being questioned or asked for identification. (SAC ¶¶ 29-46.)

The Second Amended Complaint alleges these violations only against the State Defendants, and therefore these allegations would hold the State Defendants liable in respondeat superior for the actions of state employees. This Court has previously held the provisions of the New Jersey Tort Claims Act regarding intentional torts by employees, discussed above, to be inapplicable to violations of state constitutional rights. Garcia v. New Jersey, Civ. No. 06-435, 2006 WL 3490348, *3 (D.N.J. Dec. 1, 2006) (citing Garlanger v. Verbeke, 223 F. Supp. 2d 596, 604 (D.N.J. 2002)). Therefore, the State Defendants are not entitled to immunity on this claim. The Third Amended Complaint adds the Trooper Defendants to this claim. (TAC ¶ 106.)

### 7. Failure to Train: Count 5

Count 5 alleges that the State Defendants negligently hired, trained, and retained the Trooper Defendants. The State Defendants argue that this Count should be dismissed because

Plaintiff fails to allege any facts that could be reasonably construed to evidence deliberate indifference on the part of the State Defendants towards Plaintiff.  (State Defs.'s Br. at 19-20.)  Plaintiff argues in response that he has met the notice pleading standards of Conley v. Gibson and the claim should survive.  355 U.S. 41 (1957).

Count 5 includes allegations that the State Defendants had a "duty to the general public to insure the officers were competent"; that Trooper Defendants Kerchersy and DiJoseph were "incompetent, unfit, or dangerous"; that the State Defendants could have foreseen that the Trooper Defendants would create a risk of harm to other persons; and that the State Defendants' actions and inactions caused Plaintiff's injuries.  (SAC ¶¶ 88-91).  The Third Amended Complaint further alleges that citizen complaints had previously been filed against the Trooper Defendants in the past, resulting in investigations by their law enforcement employers.  (TAC ¶¶ 98-99.)

This claim against the State Defendants cannot be brought pursuant to § 1983, because the State Defendants are not persons covered by that statute's provisions.  However, Count 5 can be construed as a claim under New Jersey law, which permits claims for negligent hiring and retention.  Di Cosala v. Kay, 450 A.2d 508, 516 (N.J. 1982).  To prove this claim, a plaintiff must show that the individual alleged to have committed the wrongful act would not have been able to do without being hired or retained by the defendant.  An important element is the foreseeability of the ultimate harm to the plaintiff.  See N.S. v. Borough of Prospect Park, L-2824-03, 2006 WL 3475053, * 4-6 (N.J. Super. Ct. App. Div. Dec. 4, 2006).

The Court agrees that the Second Amended Complaint provided no factual allegations in support of its bald assertions of liability.  However, the Third Amended Complaint, which had

not yet been filed at the time this motion was submitted, does allege specific facts supporting the connection between the State Defendants' actions and Plaintiff's harm. Because the allegations in the Third Amended Complaint provide a more detailed factual basis in support of this claim and the parties have not yet had a chance to address these allegations, the Court will deny the State Defendants' motion to dismiss Count 5.

**B.    Motion For Summary Judgment by the City of Camden**

**1.    Standard of Review**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating the evidence presented by the parties, the Court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the

13

nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### 2.    Discussion

First, the Court will dismiss the claims against the Camden Police Department and Chief Figueroa.  "In New Jersey a municipal police department is not an entity separate from the municipality, N.J. Stat. Ann. § 40A:14-118 (municipal police department is 'an executive and enforcement function of municipal government'); therefore, the Camden Police Department is not a proper defendant." Adams v. City of Camden, 461 F. Supp. 2d 263, 266 (D.N.J. 2006).  See also DeBillis v. Kulp, 166 F.2d 255, 264 (E.D. Pa. 2001).  Because Chief Figueroa has been sued in his official capacity as the Chief of the Camden Police Department, he similarly has been sued as an arm of the municipality and will not be independently liable.  To the extent any of Plaintiff's claims are alleged against the Police Department or Chief Figueroa, these claims are dismissed.  The Court will refer to the City of Camden as "the Camden Defendants."

The Counts against plead Camden Defendants in the Third Amended Complaint are Count 2 (false arrest), Count 3 (false imprisonment), Count 5 (failure to train), Count 6 (violations of the New Jersey State Constitution), Count 7 (§ 1983 claim for violations of substantive due process), Count 8 (§ 1983 claim for violations of  equal protection), Count 9 (§ 1983 claim for violations of the Fourth Amendment), Count 10 (§ 1983 claim for violations of the Eighth Amendment), Count 13 (emotional distress), Count 14 (failure to train), and Count 19

(claim for injunctive relief).

In a prior Opinion and Order in this case, Judge Donio noted that in Plaintiff's First Amended Complaint, he named the City of Camden as a defendant but did not attribute specific conduct or specific counts to the City of Camden or any Camden employee. (June 29, 2007 order, Docket Entry No. 42.) In the Second and Third Amended Complaints, Plaintiff asserts specific counts against the Camden Defendants but still does not attribute specific actions to the City of Camden or any City of Camden employees in any of the allegations. Moreover, this matter comes before the Court on a motion for summary judgment and not on a motion to dismiss. In responding to a motion for summary judgment, a party cannot merely rest on the pleadings. Fed. R. Civ. P. 56(e) (responding party "may not rely merely on allegations or denials in its own pleading"). The Plaintiff must show evidence in the record supporting each element on which the Plaintiff will bear the burden of proof. Plaintiff has provided no record evidence, only further factual allegations in an uncertified letter from his attorney. These "mere allegations" and "vague statements" are insufficient on a motion for summary judgment. Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991).

Because there is no evidence of the participation of the Camden Defendants in any of the violations claimed in Counts 2, 3, 6, 7, 8, 9, 10, and 13, summary judgment will be granted to the Camden Defendants on those counts in Plaintiff's Second Amended Complaint.

The only claims which do allege participation on the part of the Camden Defendants is Counts 5 in the Second Amended Complaint, in addition to Counts 14 and 19 in the Third Amended Complaint. Count 5 alleges the Camden Defendants had a duty to insure the competency of the Trooper Defendants (presumably because of Camden's participation in CAP),

15

and the Camden Defendants created a risk of harm to Plaintiff by allowing these "incompetent, unfit, or dangerous" individuals to continue working as law enforcement officers.  (SAC ¶¶ 87-91; TAC ¶¶ 92-102.)

To the extent this claim seeks redress from the Camden Defendants for the alleged constitutional violations of the Trooper Defendants, it is barred.  There can be no claim for respondeat superior liability for a municipality.  Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690-91 (1978).  Municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of.  Monell, 436 U.S. at 690-91, 694; see also Natale, 318 F.3d at 583-84.  A municipality can be held liable based on a theory of failure to train or of independent wrongdoing, but only when the municipality's policy or custom is the "moving force" behind a constitutional violation.  Sanford v. Stiles, 456 F.3d 298 (3d Cir.2006).  To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).  Plaintiff can point to no evidence that the implementation of any municipal custom or policy was the cause of any constitutional violation.

Additionally, as noted above, Count 5 can be construed as a claim under New Jersey law for negligent hiring and retention.  Di Cosala, 450 A.2d at 516.  However, there is no evidence that the Camden Defendants had any control whatsoever over the hiring, training, or retention of the Trooper Defendants.  Moreover, Judge Donio has previously ruled that Plaintiff may not assert any claims against the City of Camden based on a partnership theory of liability resulting

16

from Camden's participation in CAP, as this would be an impermissible attempt to impose respondeat superior liability. (Order of June 29, 2007, Docket Entry No. 42 at 28-29.) Because proof on the Camden Defendants' actions in hiring or retaining the officers would be a necessary predicate to finding of liability for negligent hiring or retaining, the Camden Defendants are entitled to summary judgment on Count 5.

Counts 14 and 19 were added by the Third Amended Complaint, which was filed after the Camden Defendants moved for summary judgment. Count 14 is very similar to Count 5 and alleges that Camden's failure to train the Trooper Defendants resulted in Plaintiff's injuries. (TAC ¶¶ 140-54.) Count 19 seeks injunctive relief based on the presence of Plaintiff's name in law enforcement data banks. (TAC ¶¶ 185-88.) The parties have not had a chance to address whether summary judgment on these claims is appropriate and the Court will not comment on them at this time.

### III. CONCLUSION

As discussed above, Count 10 is dismissed as to all defendants. Plaintiff's Fifth Amendment claims, expressed in Count 8, are also dismissed against all defendants.

Counts 7, 8, 9, 11, and 12 are dismissed as to the State of New Jersey, the New Jersey Division of State Police, and State Police Superintendent Fuentes for failure to state a claim. Counts 1, 2, 3, 4, and 13 against the State Defendants are dismissed by operation of the New Jersey Tort Claims Act. Plaintiff's claims in Counts 5 and 6 remain as to these defendants.

Trooper Defendants DiJoseph and Kerchersky are denied immunity in their official capacity as members of the New Jersey State Police for Counts 1, 11, 12, and 13 as those claims are alleged in the Second Amended Complaint. The Third Amended Complaint asserts claims

against these defendants in the individual capacity in Counts 1, 6, 7, 8, 9, 11, 12, and those claims remain.

      The City of Camden, the Camden Police Department, and Police Chief Figueroa are granted summary judgment on all claims plead against them in Plaintiff's Second Amended Complaint.  The Third Amended Complaint adds additional claims against these defendants in Counts 14 and 19, and those claims remain.


Dated:  3/27/2008                                             /s/ Robert B. Kugler
                                                                ROBERT B. KUGLER
                                                                United States District Judge