[Doc. No. 154]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| HALBERT COURSEY,<br><br>      Plaintiff,<br><br>  v.<br><br>CITY OF CAMDEN, et al.,<br><br>      Defendants. | Civil No. 05-2820-RBK-AMD<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

This matter comes before the Court by way of motion of Plaintiff, Halbert Coursey, seeking to replace Plaintiff's expert, Robert J. Pasahow, Ph. D., with another health care professional. The Court held oral argument on the motion by telephone on March 27, 2009, at which time George L. Farmer, Esquire, appeared on behalf of Plaintiff; Mark M. Cieslewicz, Esquire, appeared on behalf of the City of Camden, the City of Camden Police Department, and Edwin Figueroa, Chief of the Camden Police Department; and Vincent J. Rizzo, Jr., Deputy Attorney General appeared on behalf of the State of New Jersey, the New Jersey Division of State Police, Colonel Joseph R. Fuentes, Superintendent of the New Jersey State Police, Thomas P. Kerchersky, Lennie I. DiJoseph, and Gregory A. Leach (hereinafter, the "State Defendants").[1]  The Court

---

1. The State Defendants filed a letter brief [Doc. No. 158] in opposition to the motion to replace Plaintiff's expert. Defendants Delaware River Port Authority and Officer Michael Voll joined in the State Defendants' opposition and adopted the

reserved decision on the motion at the hearing on March 27, 2009. For the reasons that follow and for good cause shown, Plaintiff's motion is denied.

The background of this case was set forth at length in the District Court's Opinion of March 27, 2008, and only those facts relevant to the present motion shall be recounted herein. Plaintiff generally alleges that on February 5, 2004, he was subject to excessive force and strip searched, which purportedly caused physical, emotional, and psychological injuries to Plaintiff.  (Br. in Supp. of Pl.'s Mot. for the Opportunity to Replace Pl.'s Expert, Robert J. Pasahow, Ph.D. (hereinafter, "Pl. Br.") 2-3.)  Plaintiff was evaluated and treated by Dr. Pasahow, and Dr. Pasahow prepared an expert report on behalf of Plaintiff. (Id. at 3.)  On February 28, 2008, the Court entered a Scheduling Order requiring all expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2) to be served by February 29, 2008.  (Scheduling Order [Doc. No. 88] ¶ 2, Feb. 28, 2008.)  The Court's May 12, 2008 Scheduling Order required depositions of proposed expert witnesses to be concluded by May 30, 2008.  (Scheduling Order [Doc. No. 104]

---

arguments set forth in the papers submitted by the State Defendants.  (See Letter [Doc. No. 159], Jan. 5, 2009.) Plaintiff's claims against the Delaware River Port Authority and Officer Voll were dismissed by the District Court on summary judgment.  At oral argument, counsel for the City of Camden, the City of Camden Police Department, and Edwin Figueroa indicated that his clients also adopt the position taken by the State Defendants on this motion.

2

¶ 2, May 12, 2008.)[2]  The parties scheduled the deposition of Dr. Pasahow for May 30, 2008.  (Cert. of George L. Farmer [Doc. No. 154], Dec. 15, 2008 (hereinafter, "Farmer Cert."), Ex. 1.)

The issue presently before the Court is whether Plaintiff may substitute Dr. Pasahow for another expert based upon Dr. Pasahow's purported inability to testify.  Plaintiff raised the issue first by letter dated May 21, 2008, in which Plaintiff's counsel advised the Court that Dr. Pasahow had undergone "complicated back surgery" and would be "out indefinitely."  (Id.)  In response to counsel's letter, the Court entered a revised Scheduling Order extending the time to conduct the deposition of Dr. Pasahow to June 30, 2008.  (Scheduling Order [Doc. No. 107] ¶ 1, May 29, 2008.)  By letter dated June 27, 2008, Plaintiff's counsel advised the Court that Dr. Pasahow was "still recuperating," could not "sit for extended periods of time," and did not have an estimated date by which he would be able to be deposed.  (Farmer Cert., Ex. 3.)  Plaintiff's counsel again wrote to the Court on August 22, 2008, at which time he represented that Dr. Pasahow's health was "improving" but that he would not be available for deposition through late September.  (Farmer Cert., Ex. 5.)  By letter dated September 26, 2008, Plaintiff's counsel advised the Court that Dr. Pasahow did not anticipate that he would be able to participate in a deposition for

---

2.   These Scheduling Orders specifically stated that "[t]he schedule set herein will not be extended unless good cause is shown."  (Scheduling Order [Doc. No. 88] ¶ 6, Feb. 28, 2008; Scheduling Order [Doc. No. 104] ¶ 6, May 12, 2008.)

"another four to six months." (Farmer Cert., Ex. 7.) As of December 5, 2008, Dr. Pasahow purportedly informed Plaintiff's counsel that he would be unable to be deposed in January 2009. (Farmer Cert., Ex. 13.)

Plaintiff asserts that good cause exists to modify the scheduling order because Dr. Pasahow's alleged inability to appear for deposition is due to his physical condition, as he is unable to sit for extended periods of time, which condition is beyond Plaintiff's control. (Pl. Br. 4, 5.) Plaintiff contends that he advised the Court immediately of the potential inability to take Dr. Pasahow's deposition in light of his physical condition, and has continually requested the opportunity to replace Dr. Pasahow with another expert. (Id. at 4.) In support of the motion, Plaintiff submitted a certification of Dr. Pasahow in which he states that as of December 8, 2008, he was "still recovering from [his] surgery," that the surgery left him "incapacitated," and that he was "out of work completely for an extended period of time." (Cert. of Robert J. Pasahow [Doc. No. 154-2] (hereinafter, "Pasahow Cert.") ¶¶ 3, 4.) Dr. Pasahow further states that as of December 8, 2008, he had returned to his practice on a part-time basis, though he was still under a doctor's care, needed to take breaks, needed to rest at different times throughout the day, needed to position himself on or in a reclining chair when seeing patients, and could not sit "for any extended period of time[.]" (Id. at ¶¶ 5-7.) In addition, Dr. Pasahow expresses his understanding that

4

Defendants agreed to limit the deposition to three or four hours and take period breaks, but "[r]egardless of the time suggested, and regardless of Defendants' suggestion of taking breaks, [he is] not physically able to commit to having any deposition taken in that manner in January, 2008 [sic], due to the painful condition that still exists in [his] back." (Id. at ¶ 9.)

The State Defendants oppose Plaintiff's motion on a number of grounds. The State Defendants first argue that if Plaintiff is permitted to replace his expert at this juncture, five years after the incident that gave rise to this litigation, any newly retained expert would be evaluating the "traumas, life experiences, accidents, illnesses or other emotionally or psychologically stimulating events" that Plaintiff has experienced since the 2004 incident that are unknown to Defendants. (Letter Br. [Doc. No. 158] (hereinafter, "Def. Br.") 3, Jan. 2, 2009.) The State Defendants thus assert that they would be prejudiced because the opinions or conclusions of the new expert would necessarily include these events and occurrences, and because obtaining a new expert will further extend discovery when the discovery period "ended long ago." (Id.) In addition, the State Defendants contend that Plaintiff fails to explain with any specificity the details concerning Dr. Pasahow's medical condition. The State Defendants specifically note that Dr. Pasahow admittedly returned to work on a part-time basis, but failed to identify the number of days per week or number of hours per day that he works, the number of

patients he sees, the length of the sessions for each patient, his ability to drive a car, or his restrictions on travel. (Id.)[3] Further, the State Defendants contend that Dr. Pasahow's alleged inability to appear for deposition is based on a "vague, self serving, self evaluative, and medically unsupported" assertion by Dr. Pasahow, with no documentation by a medical doctor as to Dr. Pasahow's alleged medical condition. (Id. at 5.) Moreover, the State Defendants note that they agreed to limit the deposition to four hours and make accommodations for Dr. Pasahow's condition.[4] The State Defendants also note that several of Plaintiff's named experts have referred to and relied upon the findings set forth in Dr. Pasahow's report, and allowing Plaintiff to obtain a new expert at this time would purportedly "throw[] into question not only Dr. Pasahow's evaluation but those of the four experts who reviewed and relied upon his findings in forming their opinions." (Id. at 5,

---

3. The State Defendants represent that they asked for these details on a number of occasions but each response from Plaintiff's counsel and Dr. Pasahow "remain[s] vague and obscure" and leaves the State Defendants "to guess about Dr. Pasahow's physical condition." (Def. Br. 3.)

4. In a letter to the Court dated October 6, 2008, the State Defendants represented that they would "provide Dr. Pasahow the same considerations and ameliorative actions he takes while seeing his current patient load," including "confining the deposition to one hour or even half hour segments and allowing Dr. Pasahow to take a break anytime he feels he has the need for one." (Farmer Cert., Ex. 9.) The State Defendants further agreed to take the deposition "on days that [Dr. Pasahow] does not attend patients at his office so that he can remain in the comfort of his home or some other location while the deposition is taken." (Id.)

6

7.)[5]

In reply, Plaintiff asserts that to the extent he obtains a new expert report, Defendants would know the information upon which the expert's conclusions are based because the report would set forth such information. (Letter Br. [Doc. No. 163] 1, Jan. 14, 2009.) Plaintiff also states that Dr. Pasahow need not make his medical history public, as he has signed a sworn certification that he is medically unable to be deposed. (Id.) Moreover, Plaintiff contends that Dr. Pasahow's return to work is not indicative of an ability to appear for deposition, as Dr. Pasahow can control the circumstances under which he sees patients, but cannot control the circumstances under which he is deposed. (Id. at 2.) Plaintiff also disputes the State Defendants' assertion that Plaintiff's other experts refer to or rely upon Dr. Pasahow's expert report in forming their opinions. (Id. at 2-3.) The Court notes that at oral argument, Plaintiff's counsel represented that he attempted to contact Dr. Pasahow on two occasions in preparation for the hearing to ascertain his condition, but Dr. Pasahow was not in the office on either day that counsel called. Counsel further stated that he received a message from Dr. Pasahow's office indicating that Dr.

---

5. In addition, the State Defendants note that before raising his medical condition as a basis for not testifying, Dr. Pasahow "resisted" appearing for his deposition for a number of other reasons, including that the expert witness fee was insufficient, the fee would not be pre-paid or paid within two weeks of the deposition, and there would be a "penalty fee" if the deposition exceeded an agreed-upon time limit. (Letter Br. [Doc. No. 158] 2 n.2, Jan. 2, 2009.)

7


Pasahow is still unable to testify, and will be unable to testify at the trial of this matter -- presently scheduled for May 18, 2009 -- because he is unable to drive to the courthouse and sit in court during the trial.[6]

Plaintiff's motion is framed as a request to enlarge the discovery period in order to identify a new expert witness. The Federal Rules of Civil Procedure provide the Court with broad authority to manage the schedule of litigation. See generally FED. R. CIV. P. 16. Rule 16 provides that the Court shall enter a scheduling order that limits the time to file motions and complete discovery. FED. R. CIV. P. 16(b). The rule further provides that the Court may modify a scheduling order "only for good cause and with the judge's consent." Id. To establish "good cause" in this context, the party seeking the extension must show that the deadlines set forth in the scheduling order "cannot reasonably be met despite the diligence of the party seeking the extension." Harrison Beverage Co. v. Dribeck Imp., Inc., 133 F.R.D. 463, 469 (D.N.J. 1990); McElyea v. Navistar Int'l Transp. Corp., 788 F. Supp. 1366, 1371 (E.D. Pa. 1991), aff'd without opinion, 950 F.2d 723 (3d Cir. 1991).

In this case, it appears that Dr. Pasahow's purported inability to be deposed is not a situation created by Plaintiff, and the Court notes that Plaintiff promptly advised the Court that

---

6. Plaintiff's counsel did not, however, provide a supplemental certification of Dr. Pasahow to support these assertions.

Dr. Pasahow's medical condition precluded his ability to be deposed at that time.  However, the Court need not determine whether good cause exists to extend the date in the February 28, 2008 Scheduling Order by which Plaintiff was to identify experts, because the Court finds that Plaintiff fails to demonstrate that Dr. Pasahow is unavailable to testify at a deposition at this time due to a diagnosed medical condition.  Plaintiff's motion is thus akin to a motion for a protective order precluding a deposition on the ground that a witness is medically unable to testify.  Under FED. R. CIV. P. 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery."  FED. R. CIV. P. 26(c)(1)(A).  Here, while Dr. Pasahow stated in his certification that he is "not physically able to commit to having any deposition taken" in January 2009 (Pasahow Cert. ¶ 9), the Court notes that Dr. Pasahow has returned to work on a part-time basis.  Plaintiff does not indicate the number of hours per day or number of days per week that Dr. Pasahow works, the amount of time he sits while treating patients, or the amount of time he sits in a car to travel to work.  Furthermore, Plaintiff provides no medical support for Dr. Pasahow's self-evaluative statement that he is unable to be deposed under any condition. See Commonwealth Scientific & Indus. Research Organisation v. Buffalo Tech., No. 6:06-cv-324, 2009 WL 260953, at *2 (E.D. Tex. Feb. 3, 2009) (where expert asserted that testifying at trial would

9

jeopardize his health, court noted that defendant failed to present any evidence that expert is "actually unable to testify due to a diagnosed medical condition" necessitating identification of substitute witness); cf. Schorr v. Briarwood Estates Ltd. P'ship, 178 F.R.D. 488, 491 (N.D. Ohio 1998) ("In seeking to prevent or delay a deposition on medical grounds, the moving party has the burden of making a specific and documented factual showing that the deposition will be dangerous to the deponent's health.") (citations omitted); S.E.C. v. Children's Internet, Inc., No. C-06-6003, 2008 WL 346419, at *3 (N.D. Ca. Feb. 7, 2008) ("There is no doubt that [the witness] has a serious medical condition.  However, the question for the Court is whether [the witness'] medical situation is so grave that he cannot participate in any kind of deposition, in particular, one in which special accommodations could be made."); Medlin v. Andrew, 113 F.R.D. 650, 653 (M.D.N.C. 1987) ("The Court finds that the brief and conclusory doctor's certificate is not sufficient to obtain a blanket ninety-day protective order against her deposition.").  Additionally, the certification submitted by Dr. Pasahow in December 2008 stated only that he would be unable to appear for a deposition in January 2009, and does not address his ability to testify at this time.  The Court also notes that the State Defendants have agreed to accommodate Dr. Pasahow by limiting the deposition to four hours over several days, taking breaks, holding the deposition at Dr. Pasahow's home or other location, and permitting Dr. Pasahow to sit

in a reclining chair. Under these circumstances, the Court finds that Plaintiff fails to demonstrate that Dr. Pasahow is unable to be deposed under the accommodations agreed to by the State Defendants. Consequently, Plaintiff's motion to replace Dr. Pasahow with a new expert is denied. Defendants shall be permitted to conduct Dr. Pasahow's deposition on or before April 30, 2009.[7]

CONSEQUENTLY, for the reasons above and for good cause shown:

IT IS on this 7th day of April 2009,

**ORDERED** that Plaintiff's motion [Doc. No. 154] to replace Plaintiff's expert, Robert J. Pasahow, Ph.D., with another health care professional shall be, and is hereby, **DENIED**; and it is further

**ORDERED** that Defendants shall be permitted to take Dr. Pasahow's deposition in two-hour increments over two days, on dates and times convenient to Dr. Pasahow, Plaintiff's counsel, and defense counsel, no later than **April 30, 2009.**


s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Robert B. Kugler

---

7. The time for completion of this deposition shall not affect the final pretrial conference date scheduled for April 22, 2009.

11